UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA CALDERON,<br>    *Plaintiff*, | )<br>)<br>) |
| *vs.* | )   1:14-cv-01748-JMS-DKL<br>) |
| CAROLYN W. COLVIN, Acting Commissioner<br>of the Social Security Administration,<br>    *Defendant.* | )<br>)<br>)<br>) |

### **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Barbara Calderon applied for disability, disability insurance benefits, and supplemental security income from the Social Security Administration on March 24, 2009. After a series of administrative proceedings and appeals, including a hearing in December 2010 before Administrative Law Judge ("ALJ") Tammy Whitaker, the ALJ issued a finding on June 8, 2011 that Ms. Calderon was not entitled to disability benefits or supplemental security income.[1] In April 2012, the Appeals Council denied Ms. Calderon's timely request for review of the ALJ's decision, and Ms. Calderon filed an action with this Court requesting that the Court review the Commissioner's denial. *See Calderon v. Astrue*, Case No. 1:12-cv-00783-JMS-MJD (S.D. Ind.). On January 11, 2013, this Court remanded the matter back to the SSA for further proceedings pursuant to 42 U.S.C. § 405(g).

On remand, the ALJ held a hearing on April 3, 2014. She then issued a finding on June 26, 2014 that Ms. Calderon was not entitled to disability benefits or supplemental security income,

---

[1] In the meantime, Ms. Calderon had reapplied for disability insurance benefits and supplemental security income, and on August 23, 2012 Administrative Law Judge Daniel Mages issued a decision granting Ms. Calderon benefits as of June 9, 2011. [Filing No. 14-10 at 19.] Accordingly, this decision relates only to benefits Ms. Calderon may be due for the period from February 14, 2009 (her alleged onset date) to June 8, 2011 (the day before she began receiving benefits according to ALJ Mages' decision). [*See* Filing No. 14-10 at 20.]

despite the ALJ's consideration of new evidence. In January 2015, the Appeals Council denied Ms. Calderon's request for review of the ALJ's June 26, 2014 decision, [Filing No. 14-10 at 2],[2] rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. 20 C.F.R. § 404.981. Ms. Calderon then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's most recent denial.

# I.
## BACKGROUND

Ms. Calderon was forty years old at the time of her disability application on March 24, 2009. [Filing No. 14-5 at 22.] She has an eighth-grade education and worked up until 2009 primarily at a nursing home as a Certified Nurses' Assistant. [Filing No. 14-2 at 66-70.] Ms. Calderon claims she is disabled based on a variety of impairments, which will be discussed as necessary below. She was last insured for purposes of disability on June 30, 2012. [Filing No. 14-10 at 24.]

### A. The ALJ's and the Appeals Council's 2011 Decisions

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ originally denied Ms. Calderon disability benefits and supplemental security income in a June 8, 2011 opinion. Then, the ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Calderon had not engaged in substantial gainful activity[3] since the alleged onset date of her disability. [Filing No. 14-2 at 18.]

---

[2] The Appeals Council noted that Ms. Calderon did not timely appeal the ALJ's June 26, 2014 decision because she appealed outside of the thirty-day period to do so. [Filing No. 14-10 at 6-7.] Despite the Appeals Council affording her an opportunity to do so, Ms. Calderon did not attempt to establish that her appeal was timely. [Filing No. 14-10 at 2.]

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

- At Step Two, the ALJ found that Ms. Calderon suffered from several severe impairments including a tear of the left knee anterior cruciate ligament, cubital and carpal tunnel syndrome, left shoulder pain, lower back pain syndrome with thoracic kyphosis, osteoarthritis, osteopenia, sleep apnea, vitamin D deficiency, obesity, fibromyalgia, generalized anxiety disorder, panic disorder without agoraphobia, obsessive-compulsive disorder, bulimia, major depressive disorder, posttraumatic stress disorder, and borderline intellectual functioning. The ALJ further concluded that several other physical impairments were not medically determinable impairments including, among other things, Ms. Calderon's history of headaches and migraines. [Filing No. 14-2 at 18-19.]

- At Step Three, the ALJ found that Ms. Calderon did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. The ALJ concluded that Ms. Calderon had the residual functional capacity ("RFC") to perform sedentary work except that, among other things, "she must be allowed to sit or stand alternatively at will and must be allowed to stay in the new position for 5-10 minutes before resuming the prior position." [Filing No. 14-2 at 22-23.]

- At Step Four, the ALJ found that Ms. Calderon did not have the capacity to perform any of her past relevant work. [Filing No. 14-2 at 28.]

- Finally, at Step Five, considering Ms. Calderon's age, education, work experience, RFC, and the testimony of a vocational rehabilitation expert ("VE"), the ALJ determined that jobs existed in the State of Indiana that Ms. Calderon could perform, such as a surveillance system monitor. [Filing No. 14-2 at 29.]

Based on these findings, the ALJ concluded that Ms. Calderon was not entitled to receive disability, disability insurance benefits, or supplemental security income. [Filing No. 14-2 at 30.]

On June 15, 2011, Ms. Calderon requested that the Appeals Council review the ALJ's decision. [Filing No. 14-2 at 12.] In support of her request, Ms. Calderon submitted additional evidence which included a May 24, 2011 Headaches Medical Source Statement from treating physician Alicia Risch, M.D. (the "Migraine Report"). [Filing No. 14-6 at 64-71.] There is nothing in the record to indicate that Ms. Calderon submitted the Migraine Report to the ALJ, and it was dated fifteen days before the ALJ issued her opinion. On April 23, 2012, the Appeals Council denied Ms. Calderon's request for review of the ALJ decision, stating it "considered…the additional evidence listed on the enclosed Order of Appeals Council," which included the Migraine

Report, and "found that this information does not provide a basis for changing the [ALJ's] decision". [Filing No. 14-2 at 2-7.] Accordingly, the Appeals Council's decision became the final decision of the Commissioner for the purposes of judicial review. Ms. Calderon then initiated her first action in this Court.

### B. The Court's Remand

On January 11, 2013, this Court remanded this matter to the SSA for further proceedings. *See Calderon v. Astrue*, 2013 WL 139698 (S.D. Ind. 2013). The Court concluded that remand was not warranted based on Ms. Calderon's Step Five challenge to the ALJ's 2011 decision, but that remand was appropriate based on the Appeals Council's erroneous determination that the Migraine Report was not new and/or material evidence warranting its review of the ALJ's 2011 decision. The Court remanded to the SSA for further proceedings, noting that:

> The Migraine Report directly contradicts the ALJ's conclusion that Ms. Calderon's headaches do not affect her ability to work…. Indeed, Dr. Risch opines that Ms. Calderon is incapable of even low stress work, could not perform even basic activities during a time she has a headache, would be "off task" 25% or more of the time, and is likely to miss more than four days of work per month. Additionally, the ALJ's conclusion that Ms. Calderon could perform the job of surveillance system monitor, which involves "[m]onitor[ing] premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors…[and observing] television screens that transmit in sequence views of transportation facility sites,"…is directly contradicted by Dr. Risch's opinion that bright lights and looking or focusing on a computer screen could trigger headaches. The Court finds that, had the Commissioner considered the Migraine Report, there is a reasonable probability that a different conclusion would have been reached.

*Id.* at *6.

### C. The 2014 Opinion

Upon remand, the ALJ again found that Ms. Calderon was not entitled to benefits. Specifically, the ALJ recognized in a June 26, 2014 opinion that "headaches and history of acute cephalgia" were two of Ms. Calderon's severe impairments, but crafted an identical RFC as in her 2011

opinion, found that Ms. Calderon could perform work as a surveillance camera monitor, and ultimately reached the same conclusion she had reached in her 2011 opinion – that Ms. Calderon is not entitled to disability benefits or supplemental security income. Ms. Calderon's current request for review relates only to whether the ALJ properly considered Ms. Calderon's evidence of headaches on remand.

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Ms. Calderon challenges the ALJ's 2014 opinion based on the following arguments: (1) that, even though the ALJ recognized Ms. Calderon's headaches as a new severe impairment, she did not revise her RFC assessment to reflect that new severe impairment; (2) that the ALJ failed to evaluate the three precipitants of Ms. Calderon's headaches – bright lights, stress, and looking at a computer monitor; and (3) that the ALJ erroneously required objective evidence of Ms. Calderon's headaches. [Filing No. 20 at 9-14.] The Court will address each argument in turn.

### A. The ALJ's Failure to Revise the RFC

First, Ms. Calderon argues that the ALJ did not explain how she found that Ms. Calderon had the additional severe impairment of headaches on remand, but then crafted the same RFC as in 2011, when she did not include headaches in Ms. Calderon's list of severe impairments. [Filing No. 20 at 9-10.]

The Commissioner responds that the ALJ's RFC is supported by the evidence, and that Ms. Calderon has not pointed to any authority standing for the proposition that an ALJ's RFC on remand cannot be the same as the previous RFC. [Filing No. 25 at 7-8.] The Commissioner contends that the ALJ considered Ms. Calderon's headaches in the 2011 opinion, but she just did not denote them as severe. [Filing No. 25 at 8-9.] Accordingly, the Commissioner argues, it is not surprising that the RFC on remand is the same as the RFC the ALJ set forth in her 2011 opinion. [Filing No. 25 at 9.] The Commissioner argues that the ALJ "thoroughly discussed the history and treatment for [Ms. Calderon's] headaches…[and] reasonably found that [her] allegations of daily headaches/migraines were unsupported by the evidence and her symptoms did not cause the degree of limitation that she alleged." [Filing No. 25 at 9-10.]

On reply, Ms. Calderon asserts that she did not argue that an ALJ is never permitted to set forth the same RFC on remand as before remand, but that substantial evidence just does not support doing so here. [Filing No. 27 at 2.]

Ms. Calderon is correct that the ALJ found her headaches to be a severe impairment in her 2014 opinion, but crafted the same RFC as in her 2011 opinion. This, however, is because the ALJ found that Ms. Calderon's claims of daily headaches and migraines were not supported by the objective evidence in the record. Specifically, in the section of her 2014 opinion discussing the RFC, the ALJ spent several paragraphs explaining why she was discounting Ms. Calderon's allegations of daily headaches and migraines, noting that:

- Medical records related to Dr. Risch's treatment of Ms. Calderon do not reflect the frequency and severity of her headaches, [Filing No. 14-10 at 34];

- Ms. Calderon went to the emergency room on April 18, 2009 for "gradual onset intermittent headache for three days," but refused pain medication and "only wanted to know if she had a sinus infection," [Filing No. 14-10 at 34 (discussing Filing No. 14-8 at 57 (emergency room notes stating "pt refusing pain medication, only wants to know if she has a sinus infection….pt states her [headache] has improved, will fu with her pcp")];

- Two days after the April 18, 2009 emergency room visit, Ms. Calderon visited Dr. Risch and reported that she had not taken over the counter medication for her headaches. Dr. Risch noted that the headaches were related to sinusitis, that Ms. Calderon did not have typical migraine symptoms, and that "there may have been a tension component to the headache." Dr. Risch stated "[i]f h/a doesn't improve with tx of allergy/sinus, then consider referral to neuro." There is no evidence in the record that Ms. Calderon was ever referred to, or received treatment from, a neurologist. [Filing No. 14-10 at 35 (discussing Filing No. 14-8 at 6-8)];

- In Dr. Risch's medical source statement from December 2010, she did not reference headaches as a medical diagnosis and indicated that the side effects of Ms. Calderon's medication could include headaches. [Filing No. 14-10 at 36 (discussing Filing No. 14-9 at 99-104)].

- Based on the above medical evidence, the ALJ gave little weight to the 2011 Migraine Report. [Filing No. 14-10 at 36.]

The Court finds that the ALJ, on remand, considered the medical records related to Ms. Calderon's headaches and adequately explained why she was discounting Ms. Calderon's claim that her headaches were a functional limitation. Essentially, the ALJ concluded that Ms. Calderon's claim of headaches that affected her ability to work was not credible and, accordingly, did not need to be accounted for in her RFC. *See Outlaw v. Astrue*, 412 Fed. Appx. 894, 897-98 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility, and we generally defer to an ALJ's credibility finding unless it is 'patently wrong'….The ALJ needed only to include limitations in [the claimant's] RFC determination that were supported by the medical evidence and that the ALJ found to be credible"); *Simila v. Astrue*, 573 F.3d 503, 520-21 (7th Cir. 2009) (ALJ need only include in hypothetical questions to the vocational expert "those impairments and limitations that he accepts as credible").

Although the ALJ did not discuss the Migraine Report in great detail, she stated that she was giving "very little weight" to it "for the reasons stated above," referring to her analysis of the medical evidence regarding Ms. Calderon's headaches. The ALJ complied with the Court's remand order by considering the Migraine Report and, in fact, explained in detail why she was giving it little weight and also explained how the medical evidence in the record contradicts Ms. Calderon's claim that her headaches were functionally limiting. Accordingly, the Court finds that the ALJ's failure to account for the headaches in Ms. Calderon's RFC was not an error requiring remand.

### B. The ALJ's Failure to Consider the Three Precipitants of Ms. Calderon's Headaches

Ms. Calderon argues that the ALJ failed to evaluate the three precipitants of headaches that Dr. Risch identified – bright lights, stress, and looking at a computer monitor. [Filing No. 20 at

11.] Ms. Calderon also argues that the Court, in its remand order, "recognized that [the] three precipitants…are important," so the ALJ was required to evaluate them. [Filing No. 20 at 11.]

The Commissioner responds that the three precipitants are in the Migraine Report, which the ALJ gave little weight to, so the ALJ did not have to also evaluate them. [Filing No. 25 at 11.] Additionally, the Commissioner argues that the Court did not explicitly order the ALJ to consider the three precipitants. [Filing No. 25 at 13.]

On reply, Ms. Calderon argues that the Court "recognized that evidence of [the] precipitants was important and that as such they needed to be evaluated expressly." [Filing No. 27 at 5.]

Initially, the Court notes that in its remand order, it did not specifically order the ALJ to consider the three precipitants of Ms. Calderon's headaches contained in the Migraine Report. Rather, the Court recognized that the ALJ's finding that Ms. Calderon could be a surveillance system monitor directly contradicted the Migraine Report's finding that her migraines could be triggered by bright lights and looking at or focusing on a computer screen. *Calderon*, 2013 WL 139698 at *6. Accordingly, because the ALJ had not considered or discussed the Migraine Report at all, the Court ordered her to do so on remand. *Id.*

As the Court has discussed above, the ALJ adequately explained why she concluded that Ms. Calderon's headaches did not cause functional limitations that warranted inclusion in the RFC. This explanation included an explicit finding by the ALJ that she was giving little weight to the Migraine Report because of the lack of consistent evidence in the record. Because the ALJ adequately explained her rejection of the Migraine Report, she was not obligated to specifically discuss the three precipitants of Ms. Calderon's headaches identified in the Migraine Report itself. [*See* Filing No. 14-10 at 35 (ALJ stating "As for precipitating and aggravating factors, I made

allowances for the claimant's subjective reports to the extent that they are consistent with objective evidence of record").] Remand on this issue is not warranted.

### C. The ALJ's Requirement of Objective Evidence for Subjective Complaints

Finally, Ms. Calderon argues that the ALJ "erroneously required unspecified 'objective' evidence of the subjective." [Filing No. 20 at 13.] Ms. Calderon asserts that the ALJ "did not explain which specific objective sign or laboratory finding would demonstrate the existence of headaches of the frequency that [Ms.] Calderon reported." [Filing No. 20 at 13.]

The Commissioner responds that Ms. Calderon's argument is really that the ALJ's credibility determination was erroneous. [Filing No. 25 at 14.] The Commissioner again contends that the ALJ adequately explained her determination that Ms. Calderon's claims regarding the severity of her headaches were not supported by the medical evidence. [Filing No. 25 at 14.]

Ms. Calderon argues on reply that the ALJ "did not explain which specific objective signs or laboratory finding would demonstrate the existence of headaches of the frequency that [Ms.] Calderon reported or cite any authority that the record lacked of any specific regulatory 'sign' that would have been present if [Ms.] Calderon had headaches of the severity and frequency she alleged or if [Ms.] Calderon had the three specific triggers at issue." [Filing No. 27 at 7 (emphasis omitted).]

Ms. Calderon essentially argues that the ALJ erred because she did not specify what evidence would have been enough to find that her headaches were as severe as she has claimed. But the ALJ need only explain her decision, and need not specify what Ms. Calderon could have presented for her finding to be different. And, to the extent Ms. Calderon is really arguing that the ALJ's credibility determination was erroneous, the Court has already found that the ALJ adequately explained her conclusion that the medical evidence did not support the level of severity

that Ms. Calderon claimed. The ALJ did not require "objective evidence of the subjective," but rather pointed out how the objective evidence in the record was inconsistent with Ms. Calderon's subjective level of severity. The ALJ's explanation was adequate, and this issue does not require remand.

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed.App'x 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Ms. Calderon to overturn the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

Date: 11/6/2015

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**